**EXHIBIT "A"**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAVID T. HAGGERTY,

                              Plaintiff,

                                                                **COMPLAINT**

    -against-
                                                                Civil Action No.:

MICHAEL J. BOYLAN, MARY T.
McDOWELL, and CATHERINE M. BRANNON
as Trustee of the Mary T. McDowell Irrevocable Trust,

                              Defendants.

Plaintiff DAVID T. HAGGERTY, by and through his undersigned counsel, and as and

for a Complaint against the above-captioned defendants, alleges as follows:

## THE PARTIES

    1.    Plaintiff David T. Haggerty is a natural person residing in Rensselaer County,

New York.

    2.    Defendant Michael J. Boylan is a natural person residing in Essex Junction,

Vermont.

    3.    Defendant Mary T. McDowell is a natural person who, upon information and

belief, resides in Menands, New York.

    4.    Defendant Catherine M. Brannon is a natural person who, upon information and

belief, resides in the State of Massachusetts.  She is sued in this action in her capacity as the

Trustee of the Mary T. McDowell Irrevocable Trust (the **"Trust"**).

## JURISDICTION AND VENUE

    5.    This action seeks declaratory and injunctive relief pursuant to 28 U.S.C. §2201

and Fed. R. Civ. P. 65.

1

971778.3

6.     As demonstrated more fully in the factual allegations set forth below, this Court has subject matter jurisdiction over the controversy herein pursuant to 28 U.S.C. §§1331 ("federal question" jurisdiction) and/or 1367 ("supplemental" jurisdiction).

7.     More particularly, this action seeks to stay and enjoin a certain arbitration proceeding pending before the Financial Industry Regulatory Authority (**"FINRA"**).   FINRA was established by Section 15A of the Securities Exchange Act of 1934, 15 U.S.C. §78o-3. FINRA is vested with the "authority to exercise comprehensive oversight over all securities firms that do business with the public." *Id.* This case concerns the limits on FINRA's powers to exercise arbitration jurisdiction over an individual who was not a FINRA "Member" at the time of the events at issue, and who's alleged conduct in the matter is not conduct that is regulated by FINRA.

8.     Moreover, in the underlying FINRA arbitration, the claimants, Mary McDowell ad Catherine Brannon, allege violations of the federal securities laws by respondent Boylan, including, without limitation, "Violations of 10b-5 of the Securities Exchange Act, 15 USC Section 78j(b) et seq." (Exhibit "A" hereto, pg. 14.)

9.     Accordingly, the subject matter of the underlying arbitration proceeding falls within the Court's "federal question" jurisdiction pursuant to 28 U.S.C. §1331 and 9 U.S.C. §4.

10.     Moreover, as set forth more fully below, Boylan's purported *Third-Party Claim* asserted against David Haggerty in the underlying arbitration is alleged by Boylan to be "related to" McDowell's and Brannon's claims for violations of the securities laws.

11.     Accordingly, the subject matter of Boylan's putative Third-Party Claim against Haggerty also falls within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367(a).

12.    Venue is proper within this District pursuant to 28 U.S.C. §1391(b)(1) and (2).  At least one of the defendants (Mary T. McDowell) resides in this District.  Alternatively, a substantial part of the events giving rise to the plaintiff's claim occurred in this District.

13.    This Court has jurisdiction over the person of defendant McDowell because she resides within New York State.

14.    This Court has jurisdiction over the person of defendant Brannon because, as set forth below, she has transacted business in the State of New York and this claim arises out of said transaction of business.  N.Y. C.P.L.R. §302(a)(1).  Namely, she has asserted claims against defendant Boylan in a certain arbitration proceeding that is scheduled to be heard in New York State, and this action directly concerns the arbitrability of certain issues within that arbitration.

15.    This Court has jurisdiction over the person of defendant Boylan because, as set forth below, he has transacted business in the State of New York and this claim arises out of said transaction of business.  N.Y. C.P.L.R. §302(a)(1).  Namely, he has asserted a purported Third-Party Claim against Haggerty in a certain arbitration proceeding that is scheduled to be heard in New York State, and this action directly concerns the arbitrability of that purported claim.

### FACTUAL ALLEGATIONS

16.    Plaintiff Haggerty is a Certified Public Accountant.  He is formerly the accountant of defendant Mary T. McDowell.

17.    Upon information and belief, in September 2009, defendants Mary T. McDowell and Catherine M. Brannon (as Trustee of the Trust) commenced an arbitration proceeding with FINRA against certain respondents, with a FINRA Dispute Resolution Arbitration Number of 09-5163 (the **"Arbitration"**).

3

971778.3

18.    On February 25, 2010, McDowell and Brannon filed an Amended Statement of Claim in the Arbitration. A true and accurate copy of the Statement of Claim is annexed hereto as **Exhibit "A."**

19.    In the Amended Statement of Claim, McDowell and Brannon named the following entities and individuals as "Respondents" in the Arbitration: McGinn Smith & Co., Inc., David L. Smith, Timothy M. McGinn, and Michael J. Boylan.

20.    McDowell and Brannon alleged that McGinn Smith & Co. was a FINRA-licensed broker-dealer, that Mr. McGinn and Mr. Smith were the principals of that business, and that Mr. Boylan was an employee of McGinn Smith & Co.

21.    The gist of McDowell's and Brannon's allegations in the Arbitration was that Ms. McDowell invested money with McGinn Smith & Co. in March of 2004, and that McGinn Smith & Co. mismanaged the investment and/or defrauded McDowell with respect to the transactions. McDowell and Brannon also alleged that the respondents in the Arbitration committed violations of the federal securities laws. (Exhibit "A" pg. 14.)

22.    Upon information and belief, in or about July 2010, Michael Boylan filed an Answer to the Amended Statement of Claim, which purported to assert a "Third-Party Claim" against David Haggerty. A true and accurate copy of Boylan's Answer and "Third-Party Claim" is annexed hereto as **Exhibit "B."**

23.    The purported Third-Party Claim was in the nature of common law contribution and/or indemnification.

24.    In the Third-Party Claim, Boylan alleged, in sum or substance, that Mr. Haggerty was an "agent" of Ms. McDowell's in 2004, and that Boylan communicated with McDowell through Mr. Haggerty.

4

25.     The crux of the purported Third-Party Claim is that Haggerty failed to effectively communicate Boylan's investment recommendations to McDowell, and that Haggerty failed to effectively communicate McDowell's investment expectations to Boylan.

26.     On this theory, Boylan contends that Haggerty shares the blame for Ms. McDowell's investments (managed by Boylan) that went awry.

27.     At the time of the subject transactions in 2004, Mr. Haggerty was not a FINRA Member and not a securities broker-dealer. He was an accountant.

28.     Even as alleged in the Third-Party Claim, Mr. Haggerty's purported conduct in 2004 was not conduct that is regulated by FINRA.

29.     Mr. Haggerty did become a Member of the National Association of Securities Dealers, or "NASD" (FINRA's predecessor) in the latter half of 2005. He thereafter became a Member of FINRA when it succeeded the NASD. Mr. Haggerty voluntarily discontinued his membership in FINRA effective December 31, 2011. Mr. Haggerty's entire Membership in the NASD/FINRA post-dated the securities transactions that are the subject of the Arbitration.

30.     From the time that Haggerty first received notice of the Third-Party Claim, he objected to FINRA's jurisdiction over him.

31.     After a significant period of trying unsuccessfully to negotiate with Boylan to demonstrate why the Third-Party Claim is improper within a FINRA arbitration, Haggerty filed an Answer in the Arbitration on October 10, 2012 (pursuant to an extension). A true and accurate copy of that document is annexed hereto as **Exhibit "C."**

32.     In the Answer, Haggerty explicitly objected to the jurisdiction of FINRA over the purported Third-Party Claim.

33.     On February 5, 2013, Haggerty filed a motion to dismiss the Arbitration as against him for lack of jurisdiction. To date, FINRA has failed to take action on said motion to dismiss.

34.     The hearing in the arbitration is currently scheduled to begin April 8, 2013.

35.     Upon information and belief, FINRA does not intend to rule on Haggerty's motion to dismiss prior to the hearing.

36.     Haggerty now seeks intervention from this Court, staying the hearing and decreeing that the putative Third-Party Claim is not subject to arbitration.

37.     For the Court's edification, certain named respondents in the Arbitration are not named as parties in this case, because they are protected by a preliminary injunction order previously issued by this Court. Specifically, in the case of *Securities and Exchange Commission v. McGinn, Smith & Co., et. al.*, 10 Civ. 457 (GLS)(DRH), the Court issued an order enjoining, among other things, any claimant from taking action against McGinn Smith & Co, Inc., Timothy M. McGinn and David L. Smith (Docket #96.) Accordingly, upon information and belief, the Arbitration is stayed indefinitely as against McGinn Smith & Co., Mr. McGinn and Mr. Smith, and they are not parties in interest in this case.

38.     Currently, the Arbitration hearing is scheduled to proceed only with McDowell and Brannan's claim against Michael Boylan, and Boylan's putative Third-Party Claim against Haggerty.

39.     Haggerty had no say in the selection of the FINRA arbitrators. The arbitrators were selected by the other parties to the Arbitration, before Haggerty appeared in that proceeding.

6

49.     Furthermore, Boylan's purported Third-Party Claim against Haggerty is not a "dispute between Members" that "arose out of the business activities of a [M]ember."

50.     Furthermore, the phrase "arose out of the business activities of a [M]ember" has been construed by courts to mean that the claim must arise out of business activities of a sort that are *regulated by FINRA.* That is, if the claim is based on a FINRA Member's business activities that fall outside the realm of FINRA regulation, the claim is not subject to arbitration.

51.     Haggerty's alleged conduct in 2004, even as alleged by Boylan in the Third-Party Claim, is not "business activity" that is regulated by FINRA.

52.     Accordingly, Haggerty has not submitted to arbitration of the purported Third-Party Claim. Haggerty is entitled to all of the due process, rights of appeal, and other rights associated with having the Third-Party Claim adjudicated in a court of competent jurisdiction.

53.     Accordingly, the Court should declare that the Third-Party Claim is not subject to arbitration, and should enjoin Boylan from prosecuting the Third-Party Claim in the Arbitration.

54.     There is a real and tangible controversy between the parties. Boylan has disputed Haggerty's assertion that FINRA lacks jurisdiction over him in the Arbitration.

55.     Haggerty will be irreparably harmed if he is made to have his claim adjudicated by a private arbitration panel even though he did not submit to the panel's jurisdiction (nor was he permitted to participate in the selection of the panel). Deprivation of the right to be heard in a court of law, absent any agreement to the contrary, is manifestly irreparable harm.

56.     Haggerty has no adequate remedy at law.

8

WHEREFORE, Plaintiff hereby demands a judgment declaring that the purported Third-Party Claim asserted by Michael J. Boylan against David T. Haggerty in the above-described arbitration proceeding is not subject to arbitration, and that FINRA lacks jurisdiction to hear and decide said Third-Party claim, and permanently enjoining said claim from being prosecuted in the arbitration, together with costs and disbursements of the action, and such other relief as the Court may deem just and proper.

Dated:   Albany, New York
         April 1, 2013

Yours, etc.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:   _Benjamin F. Neidl_
      BENJAMIN F. NEIDL (512303)
      *Attorneys for Plaintiff David T. Haggerty*
      677 Broadway
      Albany, New York  12207
      (518) 449-8893
      Benjamin.Neidl@wilsonelser.com

9

971778.3

**EXHIBIT "B"**

272904.1

*ARBITRATION DEPARTMENT*
*FINANCIAL INDUSTRY REGULATIONS AUTHORITY*                    *Albany, NY*

---

*MARY T. McDOWELL and*
*CATHERINE M. BRANNAN, as Trustee*
*of the Mary T. McDowell Irrevocable Trust,*

                            *Claimants,*
        *-against-*

*McGINN, SMITH & CO., INC, DAVID L. SMITH,*
*TIMOTHY M. McGINN and MICHAEL J. BOYLAN,*

                            *Respondents.*

---

# *AMENDED STATEMENT OF CLAIM*

---

*Dated: February 25, 2010*

                    **LAW OFFICES OF TIMOTHY J. O'CONNOR**
                    ***Timothy J. O'Connor, Esq., of Counsel***
                    *Attorney for Claimants*
                    *29 Wards Lane*
                    *Albany, New York 12204*
                    *(518) 426-7700*

## TABLE OF CONTENTS

**Page**

I.    BIOGRAPHICAL SKETCH ................................................................................... 1

    The Respondent McGinn, Smith & Co., Inc. .......................................................... 2

    The Respondent David L. Smith.............................................................................. 3

    The Respondent Timothy M. McGinn...................................................................... 4

    The Respondent Michael John Boylan ..................................................................... 5

    First Excelsior Income Notes, LLC........................................................................ 5

II.   DAMAGE ANALYSIS......................................................................................... 12

III.  CAUSES OF ACTION AND REGULATORY VIOLATIONS ...................................... 14

    (i)  Causes of Action........................................................................................... 14

    (ii) Violation of NASD/FINRA Rules of Fair Conduct........................................... 14

IV.  PRAYER FOR RELIEF ...................................................................................... 15

# I. BIOGRAPHICAL SKETCH

The Claimant, Mary T. McDowell, was born on September 27, 1931, in Albany, New York and is presently 77 years of age. She graduated from St. John's High School, Rensselaer, New York and attended the College of St. Rose in Albany, New York for two years. Mary took care of her elderly mother and uncle through their respective dates of death and has never married. She presently lives alone in an apartment in Menands, New York.

Following graduation from high school, Mary worked for New York Telephone and its successor entity, Verizon Telephone, for 37 years, having started in January of 1952, retiring on February 15, 1989. She presently lives on her Verizon pension of approximately $1,700.00 per month (gross) which is directly deposited to her checking account with TD BankNorth, and on Social Security income of $1,276.00 per month, which is directly deposited to her account with the Capital Communications Federal Credit Union. She drives a Mercury Milan and pays monthly rent of $1,000.

Mary was introduced to the Respondent McGinn Smith after an introduction from her accountant, David Haggerty, in the 1990s when she indicated she might need help with her investment savings for her retirement years. Mary recalls having been sold what was explained to her as "bonds" or "notes" which would provide her an assured stream of income. After her introduction to McGinn, Smith & Co., Inc. in the late 1990s, Mary recalls very little interaction with the firm until 2004 when she received certain documentation relating to an investment styled under the name of First Excelsior Income Notes, LLC, including a confirmation for the purported purchase of interests in this investment, contemporaneous with a phone call from a Michael Boylan of McGinn, Smith & Co., Inc. (see *Exhibit 1*).

1

Mary has no recollection of signing any paperwork associated with the purchase transactions involving First Excelsior Income Notes, LLC, particularized herein (see *Exhibits 1 and 2*). Recently, in the preparation phase prior to the filing of the instant Statement of Claim, her accountant forwarded her counsel correspondence from the Respondent McGinn Smith, including unsigned paperwork relating to the subject First Excelsior Income Notes, LLC, which included documentation referencing Michael Boylan, a Registered Representative who was formerly affiliated with the Respondent McGinn Smith (see *Exhibit 2*)[1]. The only recollection Mary has of having dealt with Mr. Boylan was two or three telephone conversations, and she also recalls having met him for lunch once at Ogden's Restaurant in Albany (see also the CRD Report for Michael Boylan annexed hereto as a part of *Exhibit 13*). As particularized herein, the purchase transactions involving the First Excelsior Income Notes, LLC private placement comprises of the virtual entirety of the Claimant's net worth.

### The Respondent McGinn, Smith & Co., Inc.

McGinn, Smith & Co., Inc. is a FINRA-licensed broker-dealer, which styles itself as an "investment banker" (see *Exhibit 5*). As with the Respondent Smith, McGinn, Smith & Co., Inc. has likewise been the subject of regulatory censure and fines for violating the NASD Rules of Fair Practice, including having been involved with the same aforementioned censure sanction relating to violation of NASD Conduct Rule 2110 involving the sale of private placements (see *Exhibit 5, page 22-23*). As alleged herein, McGinn, Smith & Co., Inc. was at all times herein a control person, civilly responsible for the actions of the Respondent David L. Smith, and

---

[1] The Claimant's sister, Catherine M. Brannan, is a named party Claimant herein although she has very little recollection of the subject investment in First Excelsior Income Notes, LLC other than a phone call from Mr. Boylan asking that she sign and return signature pages possibly associated with the purchase of the subject investment. Repeated requests to the Respondent's and Respondent's counsel for documentation memorializing or relating to the apparent purchase of the subject private placements in First Excelsior Income Notes, LLC have gone un-responded to as of this writing (See Exhibit 3)

Registered Representative Boylan, in addition to having been the sole underwriter and offering agent for the First Excelsior Income Notes, LLC, private placements enumerate herein.

### The Respondent David L. Smith

The Respondent David Smith has been a principal of McGinn, Smith & Co., Inc. since 1980 (see *Exhibit 4*). Mr. Smith, along with the Respondent Boylan, sold the subject private placement investments to Mary, acting in his capacity as a control person and registered representative of the Respondent McGinn, Smith & Co., Inc. Mr. Smith was at all times relevant herein an agent of the Respondent McGinn, Smith & Co., Inc., in addition to being its President, as well as a Director and control person of McGinn, Smith & Co., Inc. with respect to the activities of Michael Boylan, and was authorized to act on its behalf. Mr. Smith was at all times acting in the course and scope of his employment with McGinn, Smith & Co., Inc., in addition to his numerous other conflicting capacities. As a result, Respondent McGinn, Smith & Co., Inc. is likewise liable to the Claimants for the Respondent Smith's misconduct.

The Respondent Smith's CRD indicates that he that he holds Series 1, 4, 24, 53 and 63 licenses with the Central Register Depository (see *Exhibit 4*). Also notable, he was previously censured and fined by the National Association of Securities Dealers, including on December 5, 1994 and December 27, 1996, with the fine and censure of December 1996 specifically relating to violations of Rule 2110 in connection with three private placement investment securities, for allegedly having released funds prior to receipt of the required funding amounts by the dates stated in certain offering circulars, in contravention of SEC Rule 10b-9 (see *Exhibit 4*). As alleged herein, Mr. Smith's dealings with Mary's investment in First Excelsior were fraught with irreconcilable conflicts of interest and undisclosed compensation, notwithstanding the fiduciary duties which the Respondent Smith he owed to her.

3

### The Respondent Timothy M. McGinn

Timothy M. McGinn (CRD No. 813935) has been registered with McGinn Smith & Co., Inc. since January 9, 1981, having passed the various examinations including the General Securities Principal Examination (Series 24), the Financial and Operations Principal, the Examination Print Series (27) and other examinations in the early 1980s (see *Exhibit 12*). The Respondent McGinn's FINRA BrokerCheck registration and employment history report indicates he was the managing partner with the subject First Excelsior Income Notes, LLC since 2003, as well as being a board member of McGinn Smith Advisors which advises First Excelsior Income Notes, LLC, among other McGinn Smith sponsored private placement entities (see *Exhibits 12 and 18*, in addition to having been the manager of First Excelsior Income Notes, LLC). His previous regulatory penalties include the same Acceptance, Waiver & Consent (AWC) Resolutions and censures levied against the Respondent David L. Smith as articulated hereinabove. (See *Exhibit 12*).

At the time of the sale of the subject McGinn Smith sponsored private placements to Mary, the Respondent McGinn was Chairman of the Board of McGinn Smith Co., Inc., an entity which he has described as "an investment banking and merchant banking firm headquartered in Albany," also stating that McGinn Smith is "an investment banking/merchant banking/stock brokerage firm which was founded in Albany in 1980." At the time of the sale of the subject private placements to Mary, the Respondent McGinn ran the investment banking operations at the Respondent McGinn, Smith & Co., Inc., with the Respondent Smith running the brokerage side of the business, with both of them supervising their then co-worker, Mark C. Casolo,

4

relative to CCI Group investment into which the Claimant's holding in First Excelsior Income Notes, LLC was heavily invested (See *Exhibits 15, 16, 18* and *19*).[2]

### The Respondent Michael John Boylan

At all times herein relevant, the Respondent Michael John Boylan, was employed at McGinn, Smith from March of 2003 through January of 2008. (See *Exhibit 13*). He has been employed in the securities business on and off since June of 1986, having been employed at seven different firms, presently serving in the capacity as financial adviser with Stifel Nicolaus & Co., Inc. in Uniondale, New York. It is submitted that the Respondent Boylan was well aware at the time that he sold the subject private placement to Mary that she was a retiree, relying solely on his claimed expertise and representations that the subject investment was not suitable for her and one that would not assure her a goal of a financially secure retirement.

### First Excelsior Income Notes, LLC

The Claimant Mary McDowell invested a total of $207,000 in McGinn Smith's "First Excelsior Income Notes, LLC." The *carte blanche* business purpose and objective of the investment makes no disclosure of the grotesque conflicts of interest which the Respondents had in mind for the monies entrusted to them by Mary:

> FEIN been formed to indentify and acquire public and/or private investments, which may include, without limitation, debt securities, collateralized debt obligations, bonds, equity securities, trust preferred, collateralized stock, convertible stock, bridge loans, leases, mortgages, equipment leases, securitized cash flow instruments, and any other investments that may add value to our portfolio (individually an "Investment" and collectively, the "Investments"). We may acquire such Investments directly, or form our managing member or an affiliate of us or our managing member that has purchase the Investment. If the

---

[2] Referring to the compensation scheme employed at McGinn Smith & Co., Inc., Mr. McGinn recently testified before the United States District Court for the Northern District of New York in November of 2009 that "...we live in what I would characterize an eat what you kill environment...", "...we live in an eat what you kill world" and "...we don't get checks from the government, we eat what we kill." The McGinn, Smith Respondents certainly lived up to this credo given the manner in which the Respondents preyed upon Mary McDowell.

investment is purchased from managing member of any affiliate, we will not pay above the price paid by our managing member or such affiliate for the Investment, other than to reimburse our managing member or such affiliate for its costs and any discounts that it may have received by virtue of a special arrangement or relationship. In other words, if we purchase an Investment from our managing member or any affiliate, we will pay the same price for the Investment that we have paid if we had directly purchase the Investment. We may also purchase securities from issuers in offerings for which McGinn Smith & Company, Inc. is acting as underwriter or placement agent and for which McGinn Smith & Co. In. will receive a commission. We may retain the Investments beyond the term of the notes, sell such Investments during the term of the notes or offer the notes to preferred investors. If an Investment is removed, whether voluntarily or involuntarily, from our asset portfolio during the term of the notes, we may, at our option redeem a pro rata portion of the notes. See "Description of the Notes – Redemption at the Option of FEIN".

Little did Mary know that the Respondents were going to lend her monies which she entrusted to this venture in a failing resort in the Caribbean and a dubious ATM machine ponzi scheme based in Arizona, enterprises which were run by unqualified and incompetent individuals who had no business being in these respective fields of endeavor (see *Exhibits 14, 15, 16, 17, 18 and 19*).

For whatever reason, the Respondent David L. Smith decided to loan an entity styled under the name of Caribbean Clubs International, Inc., the sum of $449,547.00 on an apparently unsecured basis (See *Exhibit 15*). This venture was a failure from the start and at the time the Respondent Smith decided to loan these monies to this affiliated entity of McGinn Smith & Co. Inc., run by his fellow colleague, Mark C. Casolo, it had an impressive history of losing money with no chance of commercial viability on the horizon. (See *Exhibits 15, 18 and 19*). Ultimately, this venture ended up in bankruptcy proceedings which included a claim for the

6

repayment of these monies that had been foolishly given by the Respondent Smith to his unqualified and incompetent colleague, Mark C. Casolo.[3]

The filings of CCI Group, Inc. indicate as follows:

We are CCI Group, Inc. and our wholly owned subsidiary is Caribbean Clubs International, Inc., a Delaware corporation.  On August 13, 2003, we formed Beach Properties Barbuda Limited, an Antiguan Company, as a wholly owned subsidiary (see *Exhibit 19*).

Mark C. Casolo: Mr. Casolo has been our director since November 18, 2002, and on September 15, 2003, he was appointed our Chairman.  He is the Senior Vice President of McGinn Smith & Co., Inc. a NASD registered broker dealer.  Mr. Casolo has been employed by McGinn Smith since 1991, acting initially as Vice President and since 1996 as Senior Vice President.  Mr. Casolo is head of McGinn Smith's investment banking and corporate finance activities.  He also serves as Chief Operating Officer of Online Capital, Inc. a NASD registered broker dealer, and an entity majority owned by McGinn Smith.[4]  (See *Exhibit 19*)

On October 19, 2003, we entered into an underwriting agreement with McGinn Smith & Company, Inc. and agreed to issue to McGinn Smith a stock purchase warrant to acquire 500,000 shares of our common stock, and agreed to pay them a sales commission of 10% of any funds raised for the Company under the agreement. The subsidiary also agreed to pay McGinn Smith a finder's fee of 5% upon the acquisition of our Barbuda resort.  The exercise period of the warrant is five years from the date of issuance.  The per share exercise price for the shares underlying the warrant is 50% of the closing bid price of the Company's common stock as quoted the OTCBB on the termination of the offering.  The Company has

---

[3] A perusal of documentation available in the U.S. Bankruptcy for the Southern District of New York indicates that on or about April 5, 2005, the Respondent David L. Smith, as Managing Director of First Excelsior Income Notes, LLC entrusted $449,547.00 of said corpus of monies with respect to this particular separate, McGinn, Smith investment sponsored loaned and styled under the name of CCI Group, Inc., as evidenced by the attached filings with the U.S. Bankruptcy Court annexed hereto as *Exhibit 15*. Notably, this wasn't the only McGinn, Smith entity which invested monies in this investment.

[4] In a certain filing the Securities Exchange Commission on April 14, 2004, of CCI Group, Inc., it is stated that "Mr. Casolo is head of McGinn, Smith's investment banking and corporate finance activities" (page 13 of 33 of a certain 10KSB filing available through EDGAR PRO).  It is readily apparent that the Respondent Smith made no effort as a controlling person of McGinn, Smith & Company, Inc. to monitor the obvious overwhelming conflicts of interests given Mr. Casolo's numerous conflicting capacities, including that of President of CCI Group, Inc. (see *Exhibit 19*).

issued the stock purchase warrant to McGinn Smith under the October 2002 agreement (see *Exhibit 19*).[5]

These undisclosed money flows are also indicated on the flow chart annexed hereto as *Exhibit 18*.

Mr. Casolo is no longer employed by McGinn, Smith & Company, Inc., but what is known about his employment as a registered representative there is that he has been the subject of several customer-related claims, as indicated in the annexed CRD.  While a listing of Mr. Casolo's academic achievements set forth in the Private Placement Memorandum for MS Real Estate Capital Partners, LLC indicates that he has a "degree in Economics" from the State University of New York at Albany, a response to an on-line inquiry made to the website maintained by the State University of New York at Albany indicates that there is no record of his having graduated from said institution.

Mr. Casolo held a number of titles at the Respondent McGinn, Smith & Company, Inc., including that of "Senior Vice President, Corporate Finance", as well as "Managing Director" with respect to his affiliation with McGinn, Smith affiliate Atlantis Capital Management LLC; registered representative and the various other titles he held including management, officer and/or principal positions which he held with various McGinn, Smith sponsored private placement entities.  Mr. Casolo attained no heightened securities industry licensure normally required of someone in a position broker/dealer firm management, compliance or supervision,

---

[5] During October 2002 and prior to the above share exchange, our subsidiary, Caribbean Clubs International, Inc. completed a private placement of its common stock pursuant to which it sold 411,000 shares and received $1,133,633. in net offering proceeds after deducting offering costs of $148,937.  The 411,000 shares of common stock of Caribbean Clubs International, Inc., were converted to 4,855,517 shares of common stock upon completion of the stock exchange transaction.  McGinn Smith & Co., Inc. acted as the placement agent in the offering and received 10% of the gross proceeds as commissions.  In addition, McGinn Smith received a common stock purchase warrant to acquire 1,646,580 shares of common stock of the Company.  The term of the warrant is five years, and is exercisable at $0.01 per share.  When we complete the acquisition of the leasehold interest to the Barbuda property during 2005, we paid McGinn Smith a finder's fee of $220,000, of which Mr. Casolo received $115,000.  (See *Exhibit 19*)

notwithstanding his apparent exalted status in the various titles he held during his tenure of
affiliation with McGinn, Smith.[6].

The additional payments of monies to the Respondent McGinn, Smith and his various
affiliates and associated person, including Mr. Casolo have further indicated as follows:

> In May, 2004 we entered into a subsequent underwriting agreement with McGinn
> Smith & Company, Inc. and agreed to issue to McGinn Smith a stock purchase
> warrant to acquire 1,000,000 shares of the common stock at an exercise price of
> $0.01 per share and agreed to pay them a sales commission of 10% of any funds
> raised for the Company for the period from May 1, 2004 through November 1,
> 2004. The Company has not issued the stock purchase warrant to McGinn Smith
> under the May 2004 agreement. Mr. Casolo is entitled to receive 80% of the
> warrants issued to McGinn Smith. (See *Exhibit 19*)

> From October 2003 through December 2004, we raised approximately $5,174,700
> in gross proceeds through the private placement of our subordinated notes. The
> notes were offered at 100% of the face or principal amount in minimum
> denomination is $25,000 with $1,000 increments thereafter. The notes mature
> between August 31, 2008 and May 1, 2009 and are payable in full at maturity.
> Interest accrues at the rate of 12% per annum, payable quarterly. Each note
> contains an immediately detachable stock purchase warrant. The warrant enables
> the holder to purchase 300 shares of our common stock for each $1,000 in face
> value of the Notes subscribed. The exercise period of the warrants is five years
> from the date of issuance. The per share exercise price for the warrant shares is
> the lesser of $1.00 or 50% of closing bid price of the Company's common stock
> as quoted the OTCBB on the termination of the offering. Of the total amount
> subscribed, Atlantis Investors Income Notes LLC, Atlantis Strategic Total Return
> Fund, LLC, MS Real Estate Capital Partners, LLC purchased $2,166,000,
> $709,000, and $776,2000, respectively. Mark Casolo, our chairman, is the fund
> manager of the three funds. McGinn Smith, the placement agent of the
> subordinate notes under the October 2002 and May 2004 agreements, received
> sales commissions of 10% the total amount of notes sold. During 2003, 2004, and
> 2005, Mr. Casolo, as a registered broker of McGinn Smith received $180,700,
> $336,770 and $135,600 in commissions from the sales of the investor notes. Mr.

---

[6] Prior to his affiliation with the Respondent McGinn, Smith, Mr. Casolo had no meaningful experience as the
"Managing Director" or "Senior Vice President, Corporate Finance" with any firms and also no experience as an
institutional portfolio manager, but was nonetheless thrust into these positions by the Respondent McGinn, Smith &
Company, Inc., given his apparent knack for margining and marshalling the assets of unwitting and unsophisticated
senior citizens for investment into McGinn, Smith sponsored private placement. It is also submitted that the certain
periodic payments received by the Claimant from these respective entities were not legitimately earned income of
said separate enterprises, but rather, a mere return of original principal invested lulling her into a false sense of
security that the four (4) separate investments were in fact generating a legitimate, safe and a sure income, when in
fact they were imploding. Additionally, Mr. Casolo's financial history indicates his financial irresponsibility in
addition to faked academic credentials.

Casolo also was an officer of McGinn Smith. Mr. Casolo also is expected to receive 50% of the stock purchase warrants issued or to be issued to McGinn Smith in connection with the October 2002 and May 2004 underwriting agreements with McGinn Smith. (See *Exhibit 12*)

Mr. Casolo received a stock purchase warrant to acquire 1,000,000 shares of the company at an exercise price per share of $0.01 during the term of the stock purchase warrant.

None of these disclosures were ever made to Ms. McDowell and notwithstanding her overall lack of investment sophistication and experience, had she known that these apparently self-perpetuating investment entities would have been generating monies and fees for only serving the interests of the Respondents and their affiliates and associated persons, common sense would have told her that it was not a good deal.

It is submitted that CCI Group, Inc., MS Real Estate Real Estate Capital Partners, LLC, Atlantis Income Investor Notes, LLC and Atlantis Strategic Total Return (LLC) were sham enterprises wholly designed to enrich the Respondent McGinn Smith & Company and its affiliates, as well as the Respondent Smith and Mr. Casolo, without any concern for the best financial interests of the Claimant (see *Exhibit 19*).

It was well known to McGinn Smith & Company, Inc. and the Respondent Smith that Mr. Casolo had no experience and was otherwise not competent to handle the management of funds in any institutional setting (or retail context for that matter), but he was nonetheless anointed to operate these entities in a *carte blanche* fashion driving each one of them into the ground while truly only serving his own financial interests and those of the Respondent McGinn Smith, as well as various McGinn affiliates managed by the Respondent David L. Smith.

The Respondent McGinn, Smith & Company, Inc., and former broker Mark C. Casolo shared a common affiliation with Westrock Advisors, Inc., relative to the sales, marketing and/or underwriting aspect of an entity known as CCI Group, Inc., given Mr. Casolo's involvement with

10

this now defunct entity as its President and Chairman of the Board, simultaneous with his respective affiliation with McGinn, Smith and Westrock Advisors (see *Exhibits 18* and *21*). Up until the time frame of his affiliation with CCI Group, Mr. Casolo pursued a career as a marginally productive retail securities broker with two other firms having been terminated by both firms for lack of production.

The Respondent McGinn, Smith was also named as a defendant in a lawsuit brought by the Trustee in Bankruptcy Court proceedings of CCI Group, Inc. in the United States Bankruptcy Court for the Southern District of New York in January 2009 (see *Exhibit 15*). These allegations include various claims of Breach of Fiduciary Duty, Fraudulent Conveyances under state and federal law, unjust enrichment and other statutory courses of action (see *Exhibit 15*).[7]

In yet another lawsuit, First Excelsior Income Notes, LLC has been left to sue one James T. Verbic and other defendants in the U.S. District Court for the Southern District of New York seeking to recovery of $1,700,000 and other relief as a result of a failed ATM Cash Machine ponzi scheme. (See *Exhibit 14*). Had the Respondents exercised the most simple due diligence or exercised the most superficial of expediencies to have researched the business reputation (or lack thereof) of Mr. Verbic, they would have discovered that he had been suspended from the securities industry several years before they chose to entrust him with $1,700,000 worth of monies from First Independent Income Notes, LLC, an entity into which Mary McDowell invested $207,000.00 constituting the lion's share of her retirement nest egg (see *Exhibit 17*), a document readily available on the Internet.

With full knowledge of Mary's relatively limited financial needs at the time of the sale of the said private placement to her, he advised her that her investment in First Excelsior Income

---

[7] The Respondents also oversaw the foolish investment of $300,000.00 in a now defunct men's clothier (see *Exhibit 16*).

Notes was designed to generate an assured stream of income without the risk associated with the stock market and that this particular investment would afford her an income of at least $12,000.00 a year in an amount sufficient to cover her monthly rent obligation for her apartment in Park Hill.

## II.   DAMAGE ANALYSIS

| Purchase Date | Investment | Account | Amount |
|---|---|---|---|
| 3/3/04 | First Excelsior Income Notes, LLC | Account no. unknown/not available | $10,000.00 |
| 3/3/04 | First Excelsior Income Notes, LLC | IRA Account No. MSA-959375 | $22,000.00 |
| 3/3/04 | First Excelsior Income Notes, LLC | Account no. unknown/not available | $75,000.00 |
| 3/3/04 | First Excelsior Income Notes, LLC | Account no. unknown/not available | $100,000.00 |
| | | TOTAL | $207,000.00[8] |

As indicated above, there were four separate purchase transactions involving the First Excelsior Income notes occurring in the first week of March 2004 in three separate representative capacities, mainly Mary T. McDowell, individually; Mary T. McDowell, IRA Account; and Mary T. McDowell, Irrevocable Trust.  Notably, there was apparently an initial $200,000 purchase transaction issued to Mary T. McDowell, personally which was apparently separately amended or corrected resulting in the hereinabove referenced purchase configuration and the three separate representative capacities for a total purchase amount of $207,000.[9]  Mary has no specific recollection of these particular purchase transactions other than recalling that she was approached by Mr. Boylan about this investment opportunity contemporaneous with the expiration or due date of a prior McGinn Smith sponsored investment which the Mary understood to be a corporate bond.

---

[8] The available confirmations for these transactions have been annexed hereto as *Exhibit 8.*

[9] The paperwork for these transactions is still very unclear and clouded with uncertainty.

12

The Respondent McGinn Smith continually carried Mary's investments in the First Excelsior Income Notes, LLC, at their face value, notwithstanding their lack of liquidity or available market for their purchase and sale (see *Exhibit 7*). Ultimately, Mary received a letter from Andrew G. Guzzetti, Managing Director, Private Client Group of McGinn, Smith & Co., Inc., dated January 31, 2008, notifying her of the problems associated with the investment (*Exhibit 6*) followed by three separate letters of the Respondent Smith dated January 25, 2008, April 25, 2008 and October 20, 2008 (*Exhibits 9, 10, and 11*).

Mary was never advised of a specific type of business which First Excelsior Income Notes was involved with, nor does the purchaser questionnaire or the Subscription Agreement associated with this investment give any particularization of same (see *Exhibit 2*). Mary was also never provided with any explanation by any representative of the Respondent firm as to what action would be done with the monies which she entrusted to the Respondent with this investment in First Excelsior Income Notes and she merely relied upon the representations of Mr. Boylan that these "bonds" or "notes" would merely serve to generate an assured stream of income in order to assure her a financially secure retirement. Further, Mary was never informed of the speculative, unsuitable and illiquid nature of the First Excelsior private placements which were wholly unsuited for her investment objectives and financial needs.

It is submitted that the Respondents, McGinn, Smith & Co., Inc., Timothy M. McGinn and David Lee Smith, and their affiliated entities exercised virtually absolute discretion to invest said monies invested in First Excelsior in a wholly discretionary manner and in fact, said monies were invested in related and affiliated entities of the Respondents, replete with conflicts of interest and undisclosed compensation. It is also submitted that Mary's investment in First Excelsior Income Notes only served to generate fees and commissions for the Respondents and

13

their related entities and affiliates, without any real concern for the Claimant's best financial interests, given her financial needs and objectives.

### III.   CAUSES OF ACTION AND REGULATORY VIOLATIONS

#### (i) Causes of Action

1.      Breach of Contract

2.      Breach of Fiduciary Duty

3      Fraudulent Concealment

4.      Common Law Fraud

5.      Fraudulent Misrepresentation

6.      Control Person, Failure to Supervise and Unsuitability Liability and Violations of 10b-5 of the Securities Exchange Act, 15 USC Section 78j (b) et seq.

#### (ii) Violation of NASD/FINRA Rules of Fair Conduct

By merit of the terms of the Contractual Agreement entered into between the Respondent firm and the National Association of Securities Dealers, Inc. (now FINRA) in its registration commitment as a member firm of the NASD (now FINRA), as well as by merit of the contractual relationship between the Claimants and the Respondent firm, the Respondents were duty bound to abide by the NASD Rules of Fair Conduct, including NASD Rules 2110, 2310, and 3010.[10]

The Respondent Corporation violated NASD Rule 2310 ("Know Your Customer Rule") by permitting the Respondent Smith and the Respondent's broker, Michael Boylan, to sell unsuitable private placements to the Claimants. Further yet, the Respondent firm also violated Supervisory Rule 3010 of the NASD Manual by failing to appropriately supervise the Respondent Smith and McGinn, Smith & Company, Inc. Registered Representative Michael

---

[10] NASD/FINRA Manual Conduct Rule 2110 states: "A member, in the conduct of its business, should observe high standards of commercial honor and just and equitable principles of trade."

14

Boylan with respect to their dealings with the subject accounts, as well as by failing to have appropriate procedures in place to prevent the victimization of the Claimants.[11]

## IV. PRAYER FOR RELIEF

*WHEREFORE*, Claimants pray and request an award of this Arbitration Panel in the amount of Two Hundred Seven Thousand and 00/100 Dollars ($207,000.00),as against each of the Respondents, jointly and severally, together with a demand for an accounting, FINRA filing fees, FINRA forum fees, FINRA Arbitrators' fees, interim interest, contractual interest under New York State law, expert witness fees, costs, disbursements and attorneys' fees, together with any other further relief which this Arbitration Panel deems just and appropriate under the circumstances.

Respectfully Submitted,

LAW OFFICES OF TIMOTHY J. O'CONNOR

By: _____

TIMOTHY J. O'CONNOR, ESQ.
*Attorneys for Claimant*
29 Wards Lane
Albany, New York 12204
Phone: (518) 426-7700

V:\McDowell\Statement of Claim - amended.doc

---

[11] The wholly speculative and undiversified investment o f the lion's share of the Claimants' net worth in this investment was also contrary to McGinn, Smith's own web based brochure addressing "Alternate Investments" (see *Exhibit 20*).

15

**EXHIBIT "C"**

272904.1

FINANCIAL INDUSTRY REGULATORY AUTHORITY

MARY T. McDOWELL and
CATHERINE M. BRANNAN,

**RESPONDENT MICHAEL J.
BOYLAN'S ANSWER AND
AFFIRMATIVE
DEFENSES TO AMENDED
STATEMENT OF CLAIM AND
THIRD-PARTY CLAIM**

Claimants,

-against-

McGINN, SMITH & CO., INC.,
DAVID L. SMITH, TIMOTHY M.
McGINN, and MICHAEL J. BOYLAN,

FINRA Dispute Resolution
Arbitration No.: 09-5163

Respondents,

-against-

DAVID T. HAGGERTY,

Third-party Respondent

---

Respondent, Michael J. Boylan, hereby responds to Claimants' Amended

Statement of Claim as follows:

Respondent Boylan specifically denies all allegations against him. In particular,

and without limitation, it is specifically denied that Respondent Boylan knew Claimant

McDowell was relying solely on his claimed expertise and representations, that he knew

the investment was not suitable for her, that he represented the subject investment would

assure her an assured stream of income, or that he represented it would assure her an

income of at least $12,000 per year. It is specifically denied that Respondent Boylan has

been employed in the securities business on and off since June of 1986. To the contrary,

he has been employed in the securities business from 1980 through 1992 and from 2001

through today. It is denied that Respondent Boylan is serving as a financial advisor with

Stifel Nicolaus & Co., Inc. in Uniondale, New York. To the contrary, Respondent

1

Boylan is serving as a financial advisor with Stifel Nicolaus & Co., Inc. in Garden City, New York.

Respondent Boylan relied exclusively on the recommendations of David Haggerty ("Haggerty"), who was represented to Respondent Boylan to be Claimant McDowell's accountant, financial advisor, agent, and representative.

Claimant McDowell's investment strategy was developed and executed by Haggerty, with Respondent Boylan serving in the capacity of confirming with Claimant McDowell her desire to make investments in accordance with Haggerty's recommendations and instructions.

Haggerty's control over Claimant McDowell's account was manifested by the fact that Haggerty terminated her relationship with two previous account representatives from McGinn Smith before Respondent Boylan was assigned to her account.

Claimant McDowell had been a customer of McGinn Smith on other proprietary notes and private placement products for many years before Respondent Boylan joined McGinn Smith and was assigned to McDowell's account. McDowell was satisfied with the investments and wanted to continue following Haggerty's advice and recommendations to continue to invest in new private placement offerings recommended by Haggerty.

Respondent Boylan joined McGinn Smith in or about March 2003. He was assigned this account in approximately November 2003, at which time representatives of McGinn Smith, including Respondent David L. Smith, informed Boylan that Haggerty was McDowell's accountant, financial advisor, agent, and representative, and that Haggerty reviewed and made essentially all investment decisions on McDowell's behalf.

2

The investments underlying this case were not the result of any solicitation by Respondent Boylan for new investment funds. Rather, when McDowell's previous McGinn Smith investments matured (investments which had been sold not by Boylan but rather by his predecessors), Boylan advised Haggerty of the maturity of the prior investments and the availability of similar new replacement or rollover products. In the conversations with Haggerty, Respondent Boylan would inform Haggerty of the nature of the products and Haggerty would ask Boylan to forward the paperwork (Offering Memoranda and other documents) to Haggerty. Respondent Boylan made no recommendations to either Haggerty or McDowell on any product or purchase. Haggerty later informed Boylan that he had communicated with McDowell and that McDowell did wish to invest in the particular product. Boylan then contacted McDowell, reinformed her of the risks involved with the product, confirmed that Haggerty represented that McDowell wished to invest in the product, and confirmed with McDowell that she in fact wished to make the investment.

Respondent Boylan advised McDowell, both directly and through Haggerty, of the risks of the investment, and advised McDowell that she should read the Offering Memorandum carefully before investing.

Respondent Boylan denies the claim of unsuitability, and in addition asserts that Claimant is estopped from claiming unsuitability, because before Claimant made the investments in question, Claimant reviewed her investment goals and risks, and the determination of whether to purchase the notes in question, with her accountant and financial advisor Haggerty.

3

Respondent disclosed all material information regarding the investments in question to McDowell and Haggerty.

Based on McDowell's and Haggerty's representations regarding McDowell's financial condition and investment goals, Respondent Boylan believed all times relevant hereto that the investments in question were suitable for McDowell.

With respect to all conclusions of law and all allegations directed to parties other than Respondent Boylan, no response is required.

## AFFIRMATIVE DEFENSES

1.     The Amended Statement of Claim fails to state any claim upon which relief can be granted.

2.     To the extent McDowell has incurred any damages, such damages are attributable to market conditions and not any acts or omissions of Respondent.

3.     There is no direct and proximate cause or connection between any claim or alleged harm or injury by McDowell and any acts alleged to have been committed by or attributable to Respondent.

4.     McDowell has not sustained any compensable loss and/or has failed to take appropriate steps to mitigate her damages.

5.     McDowell is estopped from asserting the claims set forth in her Amended Statement of Claim because the acts about which she complains were done at the direction of, and with the full authority, knowledge and permission of McDowell or her agent.

6.     McDowell's claims are barred by the doctrines of ratification and waiver.

4

7.    To the extent McDowell incurred any damages, such damages are attributable, in whole or in part, to McDowell's or her agent's ratification of, and failure to object in a timely fashion to, the transactions she now claims are improper.

8.    At all times, Respondent Boylan acted in good faith and in full compliance with any applicable securities laws and regulations.

9.    Respondent Boylan did not breach any duty to Claimants.

10.    Claimants' claims are barred in whole or in part by the doctrines of comparative and contributory negligence.

11.    Claimants' claims are barred by the applicable statutes of limitations and/or the doctrine of laches.

12.    Claimants' claims are barred by the doctrines of waiver, ratification and estoppel.

13.    Claimants, by their acts or omissions, or the acts or omissions of Claimants' agent, have ratified any actions of Respondent Boylan that were allegedly improper.

14.    Claimants could not reasonably rely on any alleged statement by Respondent or their agents.

15.    Any alleged misrepresentations were not material.

16.    Claimants' fraud and misrepresentation claims are barred by the "bespeaks caution" doctrine.

17.    Claimants' statutory claims are barred by the agreements among the parties.

18.     Claimants do not have a private cause of action under the NASD or FINRA conduct rules.

19.     Claimants or their agents signed Subscription Agreements and were provided Offering Memoranda. The Subscription Agreements and Offering Memoranda provided, *inter alia*:

(a)     That the notes may not be suitable for all investors;

(b)     That the notes have no insurance or guarantee;

(c)     That the entity may be harmed by adverse economic conditions;

(d)     That the notes will not be registered under the Securities Act and that investors may not be able to sell the notes quickly, or at all.

20.     The Subscription Agreements contained a host of warnings and advice involving the risks, representations that the customer had no need for liquidity, that the customer could bear a complete loss, and that the customer had knowledge and experience in financial and business matters.

21.     Boylan was advised both by David Smith of McGinn Smith and by David Haggerty that Haggerty had sufficient sophistication, experience and knowledge of McDowell's financial position and investment goals to advise McDowell regarding investments, and also that Haggerty had McDowell's authorization to provide Boylan with instructions regarding McDowell's investments.

22.     McDowell confirmed to Respondent Boylan that she was willing to follow Haggerty's advice and instructions regarding investments.

6

23.     Respondent Boylan understood that Haggerty reviewed the Offering Memoranda and Subscription Agreements before they were presented to McDowell for signature.

24.     Claimant McDowell had been a customer of McGinn Smith on other proprietary notes and private placement products for many years before Respondent Boylan joined McGinn Smith and was assigned to McDowell's account. McDowell was satisfied with the investments and wanted to continue following Haggerty's advice and recommendations to continue to invest in new private placement offerings recommended by Haggerty.

25.     Respondent Boylan has viable Crossclaims against McGinn Smith, but believes he is precluded from asserting them at this time by virtue of the stay issued on April 20, 2010 in Securities and Exchange Commission v. McGinn, Smith & Co., Inc., et al., N.D. N.Y. 10-CV-457.

### THIRD-PARTY CLAIM AGAINST
### ADDITIONAL RESPONDENT  DAVID T. HAGGERTY

26.     Respondent Boylan incorporates by reference the Answers and Affirmative Defenses set forth above.

27.     At all times relevant hereto, Respondent David T. Haggerty was and remains a natural person residing in the State of New York.

28.     Upon information and belief, at all times relevant hereto, Respondent Haggerty was and remains a licensed securities broker with Central Registry Depository #12963.

29.     Upon information and belief, Respondent Haggerty has a current business address of Haggerty & McGarvey; 6 Greenwood Drive; East Greenbush, New York 12061.

30.     Respondent Boylan denies any and all liability. If, however, Respondent Boylan is found to be liable for all or any part of the within claim, then Additional Respondent Haggerty is responsible for contribution and/or indemnity to Boylan, including for counsel fees and costs incurred.

31.     Claimant McDowell and Haggerty represented to Boylan that Haggerty was McDowell's accountant, financial advisor, agent, and representative.

32.     Claimant McDowell and Haggerty represented to Boylan that recommendations and instructions from Haggerty to Boylan were made on McDowell's behalf, with McDowell's authority, and in accordance with McDowell's wishes.

33.     The strategy and decisions for McDowell's investments were made by Haggerty with actual and/or apparent authority from McDowell.

34.     Boylan would execute an investment order on behalf of McDowell only after confirming with McDowell, directly and/or through Haggerty, that McDowell wished to make the investment in question, and after providing all pertinent, material information about the product to McDowell, directly and/or through Haggerty.

35.     At all times relevant hereto, Boylan reasonably relied on consultation, advice, and instructions from Haggerty.

36.     Based on McDowell's and Haggerty's representations, Boylan reasonably believed that Haggerty was fully informed of McDowell's financial condition and investment goals and intentions.

8

37.     Based on McDowell's and Haggerty's representations, Boylan reasonably believed that Haggerty would relay to McDowell any information about prospective investments that Boylan provided to Haggerty.

38.     Haggerty has the ultimate responsibility for the investment decisions made on McDowell's behalf and for the propriety of the investments.

WHEREFORE, Respondent Boylan requests contribution and/or indemnity from Respondent Haggerty should Claimants prevail on their principal claims against Respondent Boylan.

GILBERT B. ABRAMSON & ASSOCIATES, LLC

BY:   _Gilbert B. Abramson_

GILBERT B. ABRAMSON, Esquire
Attorney for Respondent,
Michael J. Boylan

1616 Walnut Street, 5th Floor
Philadelphia, PA  19103
(215) 772-1070 (Tel.)
(215) 772-1075 (Fax)
E-mail: gabramson@gbalaw.com

DATE: 7/26/10

9

## CERTIFICATE OF SERVICE

I hereby certify that I served true and correct copies of the foregoing Respondent

Michael J. Boylan's Answer and Affirmative Defenses to Amended Statement of Claim

and Third-Party Claim on the following parties on the date set forth below by e-mail,

facsimile and/or U.S. first-class mail, postage prepaid.  I also certify that on the date set

forth below I served Third-party Respondent David Haggerty with a copy of the

previously filed Amended Statement of Claim by U.S. first class mail, postage prepaid.

Timothy O' Connor, Esquire
Law Offices of Timothy O'Connor
29 Wards Lane
Albany, NY 12204

Mr. Timothy McGinn
26 Port Huron Drive
Schenectady, NY 12309

Thomas D. Buchanan, Esquire
Hacker & Murphy, LLP
7 Airport Park Boulevard
Latham, NY 12110-1429

Mr. David T. Haggerty
Haggerty & McGarvey
6 Greenwood Drive
East Greenbush, New York  12061

GILBERT B. ABRAMSON

DATE: _7/26/10_____

10

**EXHIBIT "D"**

272904.1

KEVIN J. ENGEL, ESQ.
738 Columbia Turnpike
East Greenbush, NY 12061
Attorney for Third-Party Respondent

| | | |
|---|---|---|
| MARY T. McDOWELL and CATHERINE M. BRANNAN, | : | ARBITRATION BEFORE FINRA |
| Claimants, | : | |
| v. | : | Case No. 09-5163 |
| McGINN, SMITH & CO., INC., DAVID L. SMITH, TIMOTHY M. McGINN, AND MICHAEL J. BOYLAN | : | **ANSWER TO THIRD PARTY CLAIM** |
| Respondents, | : | |
| MICHAEL J. BOYLAN, | : | |
| Third-Party Claimant, | : | |
| v. | : | |
| DAVID T. HAGGERTY, | : | |
| Third-party Respondent. | : | |

Third-Party Respondent, David T. Haggerty ("Mr. Haggerty"), by his attorney, Kevin J. Engel, Esq., answers the Third-Party Claim of Michael J. Boylan, as follows:

## BACKGROUND

Mr. Haggerty has only been in the securities business for 7 years. His first and only employment as a registered representative began in September 2005 when he joined Money Concepts Capital Corp., a broker dealer with no connection whatsoever to the transactions complained of. The McDowell Amended Statement of Claim states under the section entitled "Damage Analysis" that there are only four separate transactions involved for which claim is made against Third Party

Claimant Boylan, all with purchase dates of March 3, 2004.  Since all of these four transactions, which are the subject of the claimed malfeasance by Mr. Boylan, preceded Mr. Haggerty's entry into the securities business, the claim against Mr. Haggerty is misplaced and precludes any basis for FINRA to assert retroactive jurisdiction over Mr. Haggerty.

### OBJECTION TO JURISDICTION

The only basis for FINRA jurisdiction over Mr. Haggerty is his registration with a member firm.  Because the disputed claim did not arise out of the business of that member firm, and preceded his licensure, arbitration cannot be compelled against him.  In Paine, Webber, Jackson & Curtis, Inc., v. Chase Manhattan Bank, NA, et al., 728 F.2d 577, 1984 U.S. App. LEXIS 25447, the Second Circuit Court of Appeals in New York held that arbitration of non-member controversies should be limited to controversies that arise out of the member firm's exchange-related business.  In that case, the Court held that any rule extending the arbitration provisions to controversies not arising out of exchange-related business would do significant injustice to the reasonable expectations of exchange members."  Id. at p. 580. See also, Gruntal & Co., v. Steinberg, 854 F. Supp. 324 and Nomura Securities International v. Citibank, 81 N.Y. 2d 614 in support of this position.  These cases support Mr. Haggerty's position that the Third Party Complaint should be dismissed.

Mr. Haggerty will be making a motion to dismiss pursuant to Rule 12504.  Paragraph (a)(6)(B) of that Rule provides that one of the grounds for making a motion to dismiss is where "the moving party was not associated with the account(s), security(ies), or conduct at issue."  FINRA explained in *Regulatory Notice 09-07* that "the panel could grant a motion to dismiss under this exception if a party files a claim against the wrong person or entity, or a claim names an individual who was not employed by the firm during the time of the dispute, or a claim names an individual or entity that was not connected to an account, security or conduct at the firm during the time of the dispute." (Id. at page 5.)

## ANSWER TO THIRD-PARTY CLAIM

26. Third-Party Respondent is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 and therefore denies the allegations contained in paragraph 26.

27. Third-Party Respondent admits the allegations in Paragraph 27.

28. Third-Party Respondent denies the allegations in paragraph 28. Third-Party Respondent Haggerty did not become licensed as a securities broker until September 13, 2005, well after the events involved in this lawsuit.

29. Third-Party Respondent admits the allegations in paragraph 29.

30. Third-Party Respondent denies that he has any liability and therefore denies the allegations in paragraph 30.

31. Third-Party Respondent admits that he provided unrelated accounting services to Claimant but denies the remaining allegations in paragraph 31.

32. Third-Party Respondent denies the allegations in paragraph 32.

33. Third-Party Respondent denies the allegations in paragraph 33.

34. Third-Party Respondent denies the allegations in paragraph 34.

35. Third-Party Respondent denies the allegations in paragraph 35.

36. Third-Party Respondent denies the allegations in paragraph 36.

37. Third-Party Respondent denies the allegations in paragraph 37.

38. Third-Party Respondent denies the allegations in paragraph 38.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Third Party Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Third Party Claimant suffered no damages by reason of the acts of Third Party Respondent.

### THIRD AFFIRMATIVE DEFENSE

Third Party Claimant failed to mitigate his damages, if any.

### FOURTH AFFIRMATIVE DEFENSE

Third Party Claimant, as a registered securities broker, directed, authorized, consented to, ratified, accepted, acquiesced in and confirmed in all respects the transactions executed in Claimants' accounts. He cannot shift the blame for his own securities recommendations to a non-registered third party. As a result, his claims are barred by law and the equitable doctrines of estoppels, ratification, laches and waiver.

### FIFTH AFFIRMATIVE DEFENSE

Third Party Claimant is barred by the applicable Statutes of Limitations.

### SIXTH AFFIRMATIVE DEFENSE

Third Party Respondent is not liable to Third Party Claimant in any amount because, at all times relevant hereto, he acted properly, in good faith and in a commercially reasonable manner.

## SEVENTH AFFIRMATIVE DEFENSE

Third Party Respondent did not breach any duty to Third Party Claimant imposed by operation of law or contract.

## EIGHTH AFFIRMATIVE DEFENSE

The Third Party claims are barred in whole or in part by applicable statutes of repose and the doctrine of laches.

## NINTH AFFIRMATIVE DEFENSE

Third Party Claimant assumed the risk of all damages.

## TENTH AFFIRMATIVE DEFENSE

Third Party Claimant, by his actions, is legally and equitably estopped from proceeding, based upon the doctrine of consent.

## ELEVENTH AFFIRMATIVE DEFENSE

Third Party Claimant's alleged losses, if any, were caused by Third Party Claimant's own conduct, negligence, or comparative or contributory negligence, and he is therefore precluded from recovering.

## TWELVTH AFFIRMATIVE DEFENSE

If there is any liability alleged or assessed against Third-Party Respondent, such liability is the sole fault of Third Party Claimant, not Third Party Respondent, and Third Party Claimant should be solely responsible for payment of all such damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Financial Industry Regulatory Authority (FINRA) lacks jurisdiction over the Third Party Respondent with respect to the claims asserted in the Third Party Claim and the Third Party Respondent is not a proper party in this proceeding.

WHEREFORE, Third Party Respondent, David T. Haggerty reserves the right to amend this pleading, add additional affirmative defenses, and/or file cross-claims, counter-claims, and/or third-party claims as further investigation of the facts and circumstances of the case warrant. I respectfully request that the Panel issue an Award dismissing the Third-Party Complaint in its entirety.

Dated:  October 10, 2012

Kevin Engel, Esq.
Attorney for Third Party Respondent
David T. Haggerty
738 Columbia Turnpike
East Greenbush, NY 12061
518-477-1018

## CERTIFICATE OF SERVICE

I hereby certify that I served true and correct copies of the foregoing Third Party Respondent David T. Haggerty's Third Party Answer and Affirmative Defenses to Respondent Michael J. Boylan's Third Party Claim on the following parties on the date set forth below by facsimile and/or U.S. First Class Mail, postage prepaid.

Gilbert B. Abramson, Esq.
Abramson & Associates, LLC
Attorney for Third Party Claimant
Michael J. Boylan
1 Presidential Blvd., Suite 315
Bala Cynwyd, PA 19004

Timothy O'Connor, Esq.
Attorney for Claimants
Mary T. McDowell and
Catherine M. Brannan, as Trustee
29 Wards Lane
Albany, NY 12204

Thomas D. Buchanan, Esq.
Hacker & Murphy, LLP
7 Airport Park Boulevard
Latham, NY 12110-1429

Timothy McGinn
26 Port Huron Drive
Schenectady, NY 12309

Date: October 10, 2012

Kevin J. Engel, Esq.