UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

DAVID T. HAGGERTY,

                          Plaintiff,

   -against-                                            1:13-CV-0362 (LEK/RFT)

MICHAEL J. BOYLAN; MARY T.
McDOWELL; and CATHERINE
BRANNAN as Trustee of the Mary T.
McDowell Irrevocable Trust,

                          Defendants.
_____

## DECISION and ORDER

**I.    INTRODUCTION**

Presently before the Court is Plaintiff's Motion for a temporary restraining order ("TRO"). Dkt. No. 6 ("Motion"). Plaintiff seeks an order partially enjoining an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA"). For the following reasons, Plaintiff's Motion is granted.

**II.    BACKGROUND**

Defendants Mary T. McDowell and Catherine M. Brannon commenced an arbitration proceeding before FINRA in September 2009.[1] Dkt. No. 6-2 ("Memorandum") at 2. On February 25, 2010, Defendants McDowell and Brannon filed an amended statement of claim naming as respondents in the arbitration proceeding McGinn Smith & Co., Inc. ("MS & Co."), David L. Smith,

---

[1] Plaintiff named Defendants McDowell and Brannon as Defendants in this action because "their interest in proceeding with the Arbitration in its current configuration, if any, may be affected by the Court's decision." Dkt. No. 6-4 ("Attorney Affirmation") ¶ 8. However, Plaintiff also asserts that Defendant Boylan is "the only true party in interest adverse to [Plaintiff] in this case." Id.

Timothy M. McGinn,[2] and Defendant Michael J. Boylan. Dkt. No. 6-5, Ex. B. In their amended statement of claim, Defendants McDowell and Brannon allege that they invested money with MS & Co. and that the company mismanaged the investment and/or defrauded Defendant McDowell in four transactions that occurred in March 2004. See generally id. Defendant Boylan was a FINRA-registered representative of MS & Co. who was allegedly involved in the subject transactions. Id. at 5, 12.

On July 26, 2010, Defendant Boylan filed an answer to the amended statement of claim. Dkt. No. 6-5, Ex. C. In addition to raising several affirmative defenses to Defendant McDowell's and Brannon's claims against him, Defendant Boylan asserted a "third-party" claim seeking to draw Plaintiff into the FINRA arbitration. Id. at 7-9. When the transactions that are the subject of the arbitration occurred, Plaintiff alleges that he provided tax and accounting services to Defendant McDowell.[3] Dkt. No. 6-3 ("Plaintiff's Affidavit") ¶ 5. According to Defendant Boylan's third-party claim, Defendant McDowell also sometimes used Plaintiff as her representative when communicating with Defendant Boylan about her investments. See Dkt. No. 6-5, Ex. C at 3. Specifically, Defendant McDowell allegedly sometimes conveyed her investment instructions to Defendant Boylan through Plaintiff, and Defendant Boylan allegedly sometimes conveyed information about investments back to Defendant McDowell through Plaintiff. See id. The basis for Defendant Boylan's third-party claim is his allegation that Plaintiff did not on these occasions accurately relay Defendant McDowell's and Defendant Boylan's communications to each other.

---

[2] According to Plaintiff, the arbitration is already stayed as against MS & Co., Smith, and McGinn pursuant to a preliminary injunction entered in SEC v. McGinn, Smith & Co. Inc. See 10-CV-0457, Dkt. No. 96; Att'y Affirmation ¶ 9.

[3] Plaintiff was not an employee of MS & Co. Pl.'s Aff. ¶ 6.

2

See id. at 7-9. Defendant Boylan therefore seeks contribution or indemnification from Plaintiff for any damages that might be assessed against him in the arbitration. Id. at 8, ¶ 30.

In his answer to Defendant Boylan's third-party claim, Plaintiff objected to FINRA's jurisdiction. Dkt. No. 6-5, Ex. D at 2. Later, on February 5, 2013, Plaintiff filed a motion with FINRA to dismiss Defendant Boylan's third-party claim on jurisdictional grounds. Dkt. No. 6-6, Ex. E at 2-3. In his motion to dismiss, Plaintiff asserts that the only possible basis for FINRA's jurisdiction over the third-party claim is his FINRA registration, which he discontinued on December 31, 2011. Id. at 2; Pl.'s Aff. ¶ 11. Plaintiff argues that FINRA lacks jurisdiction over the third-party claim, however, because he was not registered at the time of the contested transactions and became registered only later, in 2005.[4] Dkt. No. 6-6, Ex. E, Party Affidavit ¶ 9; Mem. at 4. Defendant Boylan filed a *pro se* answer to Plaintiff's motion to dismiss on March 22, 2013. Dkt. No. 6-6, Ex. F. The arbitration panel summarily denied Plaintiff's motion to dismiss on April 2, 2013, without explanation. Dkt. 10-5.

The arbitration hearing is currently scheduled to take place on Monday, April 8, 2013. Pl.'s Mem. at 2. Plaintiff therefore filed the instant Motion on April 2, 2013. Id.; Mot. Plaintiff contends that he is entitled to a TRO enjoining arbitration of the third-party claim because: (1) he can demonstrate a likelihood of success on the merits of his argument that FINRA lacks jurisdiction over the third-party claim under its own arbitration rules; and (2) he would be irreparably harmed by permitting arbitration of the third-party claim to proceed. Mem. at 6-14. Defendants McDowell and

---

[4] In fact, Plaintiff first became registered with FINRA's predecessor, the National Association of Securities Dealers ("NASD"). Pl.'s Aff. ¶ 10. Plaintiff explains that he obtained his broker-dealer's license in late 2005 because, at that time, he took a new job with a company known as Money Concepts Capital Corp. Id. Plaintiff avers that this company was not affiliated with MS & Co. and was not involved with any transactions that are the subject of the arbitration. Id.

3

Brannan filed papers in opposition on April 5, 2013, that included an affidavit in support from Defendant Boylan, dated April 4, 2013. Dkt. Nos. 10 ("Opposition"), 10-9 ("Boylan Affidavit"). Oral arguments were entertained on the afternoon of April 5.

### III. LEGAL STANDARD

Rule 65(b) of the Federal Rules of Civil Procedure authorizes a court to issue a TRO. The standards for granting a TRO are the same as those governing preliminary injunctions. AFA Dispensing Grp. B.V. v. Anheuser-Busch, Inc., 740 F. Supp. 2d 465, 471 (S.D.N.Y. 2010) (citation omitted). In this Circuit, a court will grant a motion for a preliminary injunction only where the party seeking the injunction can show "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 116 (2d Cir. 2009). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Moore v. Consol. Edison Co. of N.Y., Inc., 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citations omitted).

### IV. DISCUSSION

**A. Notice**

Although Rule 65(b) permits a court to issue a TRO "without written or oral notice to the adverse party" under certain circumstances, Plaintiff has submitted an affidavit stating that he gave oral notice to all Defendants and served or attempted to serve papers on them pursuant to the Court's Order. See Dkt. Nos. 8 ("Notice Affidavit"); 7 ("Order to Show Cause"); see also N.Y.N.D. L.R. 7.1(f) ("[A] moving party must serve any application for a temporary restraining order on all

other parties unless Fed. R. Civ. P. 65 otherwise permits."). All Defendants indicated that they were aware of the Order to Show Cause. See Opp'n; Boylan Aff. All Defendants also appeared for argument. The Court therefore concludes that all parties had notice that preliminary injunctive relief might issue.

### B. Likelihood of Success on the Merits

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). "In the absence of an agreement by the parties to submit the matter of arbitrability to the arbitrator, the question of whether or not a dispute is arbitrable is one for the court." Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Fund, 661 F.3d 164, 171 (2d Cir.2011) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995); Bensadoun v. Jobe-Riat, 316 F.3d 171, 176 (2d Cir. 2003)). "This principle 'flow[s] inexorably from the fact that arbitration is simply a matter of contract between the parties.'" Id. (quoting First Options, 514 U.S. at 943).

"FINRA-membership constitutes an agreement to arbitrate disputes under FINRA's rules." In re American Exp. Fin. Advisors Sec. Litig., 672 F.3d 113, 127 (2d Cir. 2011) (citing UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., 660 F.3d 643, 648-49 (2d Cir. 2011)). The interpretation of FINRA's arbitration rules "is similar to contract interpretation; the organization's arbitration provision should thus be interpreted to give effect to the parties' intent as expressed by the plain language of the provision." Wachovia, 661 F.3d at 171 (citing Bensadoun, 316 F.3d at 176) (internal quotation marks omitted). "The analysis differs from ordinary contract interpretation in that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" Id. (quoting John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 58 (2d Cir. 2001))

5

(other internal quotation marks omitted). "In general, however, terms such as 'customer' should be construed in a manner consistent with the 'reasonable expectations' of FINRA members." Id. (citing Wheat, First Sec., Inc. v. Green, 993 F.2d 814, 820 (11th Cir. 1993)).

In this case, Plaintiff contends that no portion of FINRA's arbitration rules apply to Defendant Boylan's third-party claim against Plaintiff. See generally Mem. Rather, Plaintiff asserts that "Boylan's 'Third-Party Claim' against Haggerty is pled as common-law contribution and/or indemnification" and argues that Defendant Boylan may not vitiate Plaintiff's right to proceed in a traditional-court setting by attempting to implead him into an otherwise arbitrable dispute. Id. at 2. Specifically, Plaintiff insists that the two FINRA sections that compel arbitration—the "Customer Arbitration Code" and the "Industry Arbitration Code"—are inapplicable to Plaintiff.[5] See generally id. The Court addresses Plaintiff's arguments in turn.

*1. The Customer Arbitration Code*

Under the Customer Arbitration Code, a member can be compelled to arbitrate under two circumstances only: (1) where arbitration is "[r]equired by a written agreement," or (2) where arbitration is "[r]equested by the customer."[6] Voegeli, 405 F. App'x at 551-52 (quoting FINRA R. 12200). The FINRA definition of "customer" states that "[a] customer shall not include a broker or dealer." FINRA R. 12100(i). A "customer" is further described as "[a] person or entity (not acting

---

[5] Plaintiff refers to the two rules in question as the "Customer Arbitration Code" and the "Industry Arbitration Code." Mem. at 8-9. For ease of reference, the Court adopts these classifications in its discussion.

[6] Rule 12200 further requires that "[t]he dispute is between a customer and a member or associated person of a member" and that "[t]he dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company."

6

in the capacity of an associated person or member) that transacts business with any member firm and/or associated person." Wachovia, 661 F.3d at 172-73 (internal quotation marks omitted) (alteration in original).

Based on the limited record currently on the docket, the Court concludes that Plaintiff has demonstrated that he is likely to achieve success on the merits under FINRA Rule 12200. First, Plaintiff asserts that no written agreement exists between Plaintiff and Defendant Boylan that would compel arbitration. Mem. at 8. Second, Plaintiff avers that Defendant Boylan is both a broker-dealer and—through his third-party claim—the party responsible for requesting arbitration. Id. Because a broker-dealer cannot be a "customer" under Rule 12100(i), Defendant Boylan cannot compel arbitration under Rule 12200.

### 2. *The Industry Arbitration Code*

FINRA Rule 13200(a) provides that "[e]xcept as otherwise provided in the Code, a dispute must be arbitrated under the Code if the dispute arises out of the business activities of a member or an associated person and is between or among Members; Members and Associated Persons; or Associated Persons." Section 13100(o) of the FINRA code defines the term "member" to include

> any broker or dealer admitted to membership in FINRA, whether or not the membership has been terminated or cancelled; and any broker or dealer admitted to membership in a self-regulatory organization that, with FINRA consent, has required its members to arbitrate pursuant to the Code and/or to be treated as members of FINRA for purposes of the Code, whether or not the membership has been terminated or cancelled.

"Associated Person" is defined as "a natural person who is registered or has applied for registration under the Rules of FINRA" or

> [a] sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is

7

registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA.

FINRA R. 13100(a), (r).

In this case, while Plaintiff concedes that he eventually became a securities broker-dealer and a FINRA member (through his registration with its predecessor, NASD), he contends that he was neither when the transactions in question occurred. Mem. at 9. As a result, he argues that he does not fall among the class of individuals governed by Rule 13200(a). Id. In the alternative, Plaintiff argues that even if he were deemed to be a "member" or "associated person" for purposes of Rule 13200(a), the third-party claim against him does not arise out of his "business activities" and is therefore not subject to arbitration under FINRA. Id. at 9-12.

Based on Plaintiff's sworn statements to the Court, a careful reading of the language of Rules 13100 and 13200(a), and a thorough review of the limited record presently available, the Court concludes Plaintiff has raised a strong claim that he was neither a "member" or an "associated person" in 2004. However, Defendant Boylan states in his Affidavit in support Defendants McDowell and Brannan's Opposition that Plaintiff "was paid 60% of the net sales commission" for the transactions at issue and that it was Defendant Boylan's "understanding that [Plaintiff] was a lead or main broker." Boylan Aff. ¶ 8. Defendant Boylan offers a breakdown of the compensation to Plaintiff and states that he became aware only later that Plaintiff was not licensed to sell securities, thus suggesting that Plaintiff may be an "associated person" and therefore subject to arbitration before FINRA. See id. ¶¶ 9-11. Nevertheless, the Court concludes that Plaintiff has shown "sufficiently serious questions going to the merits to make them a fair ground for litigation

8

and a balance of hardships tipping decidedly in the movant's favor,"[7] Faiveley, 559 F.3d at 116. Therefore, the Court need not address Plaintiff's alternative argument relating to the scope of "business activities" in this case at this time, but will instead schedule an evidentiary hearing to determine whether Plaintiff is an "associated person" and clarify his business dealings with Defendants.

### C. Irreparable Harm

"Being forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law." Voegeli, 405 F. App'x at 552 (citing Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003)). The Court's determination of irreparable harm therefore is dependent upon an assessment of the merits of Plaintiff's claims in that if Plaintiff satisfies the merits prong of the injunction analysis, he necessarily also satisfies the irreparable harm inquiry. Because the Court concludes that Plaintiff has satisfied the merits prong of the preliminary-injunctive-relief analysis, the Court concludes that he has also shown the presence of irreparable harm if emergency relief is not granted.

## V. CONCLUSION

Accordingly, it is hereby:

---

[7] As discussed herein, the Second Circuit has held that "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law." Voegeli, 405 F. App'x at 552 (citing Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003)). This rule suggests a substantial weight on Plaintiff's side in the balancing of the hardships. For Defendant Boylan, a possible delay in arbitration might certainly postpone the resolution of an ongoing dispute and require the further expenditure of resources. However, the Court concludes that such concerns on Defendant Boylan's part do not outweigh the harm of having an unarbitrable claim arbitrated. Therefore, the Court finds that equity favors a grant of injunctive relief to Plaintiff.

9

**ORDERED**, that Plaintiff's Motion (Dkt. No. 6) for a temporary restraining order is **GRANTED** consistent with this Decision and Order; and it is further

**ORDERED**, that Defendant Boylan is **ENJOINED** from arbitrating his third-party claim against Plaintiff, and any arbitration of this claim is **STAYED**. In so ordering, the Court in no way rules on the arbitrability of any other claims currently pending in the underlying FINRA action and stays no claims other than Defendant Boylan's third-party claim against Plaintiff;[8] and it is further

**ORDERED**, that an evidentiary hearing will be held before the Court on **Friday, April 19, 2013**, at the James T. Foley U.S. Courthouse, 445 Broadway, Albany, NY 12207-2924, to clarify Plaintiff's business dealings with Defendants and determine if further injunctive relief should issue; and it is further

**ORDERED**, that the parties' briefings on this issue, if any, must be filed with the Clerk of the Court and served upon the other parties on or before April 12, 2013.

**IT IS SO ORDERED.**


DATED:     April 05, 2013
           Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[8] The Court notes that the record shows no claims brought by Defendants McDowell and Brannon against Plaintiff.